IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| RASHFORD EMANUEL GALLOWAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 314-067 |
| | ) |
| CCA MCRAE CORRECTIONAL | ) |
| FACILITY; STACEY N. STONE, | ) |
| CCA McRae Warden; LYNETTE | ) |
| HARRIS, CCA McRae Unit Manager; | ) |
| CHARLES STAPLES, CCA McRae RN; | ) |
| and STACY GILES, CCA McRae Medical | ) |
| Health Services Administrator, | ) |
| | ) |
| Defendants. | ) |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

*Pro se* Plaintiff, a former inmate at McRae Correctional Facility ("MCF"), commenced the above-captioned civil rights case. Before the Court is Defendants Stone, Harris, Staples, and Giles' motion for summary judgment. (Doc. no. 41.) For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that the motion for summary judgment be **GRANTED** (doc. no. 41), Defendants' motion to dismiss be **DENIED AS MOOT** (doc. no. 55), and Plaintiff's motion to withhold all responses be **DENIED AS MOOT** (doc. no. 52). Because Defendant CCA McRae Correctional Facility failed to move for summary judgment but is most likely entitled to such on the same basis as the movants here, the Court **GRANTS** an additional thirty days for it to move for summary judgment.

**I. FACTS**

Plaintiff filed this case on July 23, 2014 against CCA McRae Correctional Facility; Stacey N. Stone; Warden, Lynette Harris, Unit Manager; Charles Stapes, RN; and Stacey Giles, Health Services Administrator (See doc. no. 1, p. 1.) Plaintiff generally alleges that Defendants failed to treat and accommodate his lower back pain. (See generally doc. no. 1.) Plaintiff's claims can generally be divided into six separate incidents: (1) a two-week delay in treatment upon arrival at MCF (Id. at 3); (2) the size of his cell during his time in the Houston Unit (Id. at 4); (3) the number of seats in the "day room" in the Houston Unit; (4) a fall caused by pain Plaintiff suffered after visiting the medical unit and not receiving treatment (Id. at 6); (5) the prison's refusal to give Plaintiff a rolling walker (Id. at 8); and (6) the prison's refusal to give him new mattresses (Id. at 9).

Plaintiff arrived at MCF on November 7, 2013, experiencing pain from the four-hour bus ride to the facility and a previous fall at Fort Dix Correctional Facility. (Doc. no. 1, pp. 2-3, 29.) Upon arrival, Plaintiff explained to Defendant Staples that he was in severe pain. (Id. at 3; doc. no. 41, p. 3.) Despite his complaints, Plaintiff was not seen by a medical professional for two weeks, and upon his first visit, he was given two mattresses to accommodate his back problems. (Doc. no. 1, p. 3; doc. no. 41, p. 3.)

On January 23, 2014, the prison assigned Plaintiff to Houston Unit, F Pod. (Doc. no. 41, p. 6.) In the Houston Unit, prisoners are housed in "cubicles" that are seven feet by seven and half feet with "day rooms" that are freely accessible by the inmates throughout the day. (Doc. no. 41, p. 7; Declaration of Allen Smith, doc. no. 41-1, pp. 20-24.) The

maximum occupancy of the day room is forty-three inmates even though fifty-four inmates lived in the Unit while Plaintiff was located there. (Declaration of Rashford Galloway, doc. no. 51, p. 29.) Plaintiff shared his private cubicle with two other inmates, with two bunks being located in the cubicle along with his walker. (Galloway Decl. ¶ 16; doc. no. 1, p. 4.) In addition to the day room, inmates moved between the cubicles, bathroom areas, recreation areas, the library, and medical unit throughout the day. (Declaration of Lynette Harris, doc. no. 41-1, p. 30.) However, all inmates were required to return to the Houston unit from 6:45 a.m. to 8:00 a.m., 9:45 a.m. to 11:00 a.m., 3:30 p.m. to 5:00 p.m., and 9:30 p.m. to 5:00 a.m. (Galloway Decl., ¶ 17.) Plaintiff alleges that the mattresses he received in the Houston Unit were "the worst of all." (Doc. no. 1, p. 9.)

On February 5, 2014, Plaintiff visited the medical unit because of severe pain, and he was given an injection and ordered a rolling walker. (Doc. no. 1, p. 8; Declaration of Stacy Giles, doc. no. 41-1, p. 15.) The medical unit waited several weeks before giving Plaintiff the rolling walker, which Defendant Staples then took away from Plaintiff. (Doc. no. 1, p. 8.) Defendant Giles, in a sworn declaration, avers that the walker was taken away because it was not medically indicated by Plaintiff's condition. (Giles Decl. ¶¶ 9, 10.) Plaintiff does not contest that the Utilization Review Committee denied his request for a rolling walker and that he received a non-rolling walker on April 1, 2014. (Doc. no. 1, p. 8; doc no. 51-1, p. 35.) Before the walker, Plaintiff used a cane to ambulate. (Doc. no. 1, p. 4.)

On February 20, 2014, Plaintiff arrived at the medical unit complaining of back pain without utilizing the prison's sick call procedure. (Declaration of Charles Staples, doc. no.

3

41-1, p. 27.) Because Plaintiff had not utilized the procedure, he was turned away and told to have his unit officer call the medical unit and report his medical condition. (Staples Decl., ¶ 3; doc. no. 1, p. 6.) Upon walking away from the medical unit, Plaintiff fell down in the hallway. (Declaration of Henry McMillian, doc. no. 41-1, p. 49; Galloway Decl., ¶ 24.) Defendant Staples responded to the call for medical assistance and found Plaintiff lying in the hall in no apparent distress. (Staples Decl., ¶ 3.) Defendant Staples reminded Plaintiff that faking an illness was prohibited and could be punished by a disciplinary report. (Staples Decl. ¶ 4.) Prison officials then placed Plaintiff in cell 151 by himself for approximately two hours without medical attention and then released him back to the housing unit. (Decl. Staples ¶ 5.)

Warden Stone is required to defer to medical staff for decisions regarding medical treatment for inmates because he has no professional medical training. (Decl. Stone, ¶, 4.) Defendant Stacy Giles is a registered nurse and Health Services Administrator at MCF. (Decl. Giles, ¶ 1.) Nurse Giles does not deliver direct medical care to patients at MCF, and she is aware of Plaintiff's condition only through review of his medical records. (Decl. Giles, ¶ 1.) However, she does sit on the Utilization Review Committee. (Decl. Giles, ¶ 1.) Defendant Lynette Harris is a unit manager and does not make medical decisions as to what type of mattresses an inmate receives. (Harris Decl., ¶ 4.)

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). When seeking summary judgment, the movant must show that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary

judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine dispute as to a material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

**B. Plaintiff Does Not Have a Claim for Deliberate Indifference to Medical Needs or Safety under Bivens.**

Here, Plaintiff attempts to bring his claims under the Eighth Amendment through 42 U.S.C. § 1983. (See doc. no. 1.) However, 42 U.S.C. § 1983 is limited to defendants who act under color of state law. Butler v. Sheriff of Palm Beach Cty., 685 F.3d 1261, 1265 (11th Cir. 2012). Because Plaintiff was incarcerated in a federal facility and none of the defendants are state actors, 42 U.S.C. § 1983 is clearly unavailable to him. Thus, the only potential claim available to him is an implied remedy under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). Because Plaintiff is *pro se*, the Court has broadly construed his complaint as attempting to bring a claim under Bivens.

Defendants argue as a threshold matter that the Court lacks jurisdiction under Minneci v. Pollard, 132 S. Ct. 617 (2012) and Alba v. Montford, 517 F.3d 1249, 1251 (11th Cir. 2008). These cases state the long-standing rule that a Bivens cause of action can only be recognized if (1) there are no adequate alternative remedies under state or federal law, and

(2) no "special factors" counsel against implying a cause of action. Robles v. Kane, 550 F. App'x 784, 787 (11th Cir. 2013). State law tort remedies are adequate when they provide roughly similar incentives for defendants to comply with the Eighth Amendment while also providing roughly similar compensation to victims of violations. Minneci v. Pollard, 132 S. Ct. 617, 625 (2012). Notably, Bivens has only been extended by the Supreme Court twice, and it has refused to extend it in other cases. See Alba, 517 F.3d at 1253.

Here, Plaintiff complains that he did not receive medical care for two weeks upon his arrival at MCF, he was not given medical care after falling on the floor, he was not given a rolling walker, and he was not given new mattresses, all in disregard to his back pain and suffering. Georgia clearly provides him with a tort remedy in state court for these claims. O.C.G.A. § 9-3-70 (explaining that "medical malpractice" includes all claims "arising out of" "[h]ealth, medical, dental, or surgical service, diagnosis, prescription, treatment, or care"). Indeed, Plaintiff possesses an "arguably superior" cause of action because he can pursue remedies under a theory of respondeat superior. Alba, 517 F.3d at 1256, n.7. Although Georgia law requires an affidavit from an expert to accompany a medical malpractice complaint, this procedural hurdle does not render Georgia tort law an inadequate remedy. Id. at 1255. Thus, Plaintiff cannot bring a Bivens claim for deliberate indifference under the Eighth Amendment because he has alternative state remedies.

To the extent Plaintiff's claims do not fall under the traditional rubric of medical malpractice, Plaintiff could also bring his claims under Georgia negligence law. Georgia negligence law provides that a plaintiff may recover for emotional distress without a showing

of physical injury if the defendant's conduct was malicious, willful, or wanton and directed toward the plaintiff. Jordan v. Atlanta Affordable Hous. Fund, Ltd., 498 S.E.2d 104, 106 (Ga. Ct. App. 1998). This standard requires conscious indifference to the consequences of one's actions. Brooks v. Gray, 585 S.E.2d 188, 189 (Ga. Ct. App. 2003). This is remarkably similar to the standard for deliberate indifference under the Eighth Amendment which requires subjective recklessness on the part of prison officials. Farmer v. Brennan, 511 U.S. 825, 839 (1994). Given the similar alignment of the Eighth Amendment standard and Georgia's negligence law for nonphysical injuries, Georgia tort law provides similar incentives for defendants to comply with the Eighth Amendment in addition to superior compensation in the form of respondeat superior.

In addition, Plaintiff's claims of overcrowding in the dayroom and in his cubicle are foreclosed by the availability of Georgia state law remedies. Plaintiff asserts these claims under the rubric of deliberate indifference under the Eighth Amendment. (Doc. no. 1, p. 13.) The availability of state law remedies under Georgia negligence law forecloses Plaintiff from bringing such a Bivens claim in this Court. See Alba, 517 F.3d at 1255-56 (no Bivens remedy for Eighth Amendment medical claim); see also Poole v. Streiff, No. CIV. A. 07-0749-KD-C, 2008 WL 2699420, at *3 (S.D. Ala. June 30, 2008) (finding Plaintiff had adequate state law remedies under Alabama law for negligence and wantonness for claims he was sent to solitary confinement); Robles v. Bureau of Prisons, No. CV511-120, 2012 WL 488080, at *2 (S.D. Ga. Jan. 23, 2012), report and recommendation adopted, No. CV 511-120, 2012 WL 484076 (S.D. Ga. Feb. 14, 2012) (dismissing claims food was nutritionally

inadequate, citing Alba). Because Bivens is a narrow remedy that is inapplicable to Plaintiff who can bring his claims in state court, Defendants Giles, Staples, Harris, and Stone are entitled to summary judgment.

    **C.    Plaintiff's Motion to Withhold Responses and Defendant's Motion to Dismiss Should be Denied.**

On January 21, 2016, Plaintiff filed a motion for Defendants to withhold all responses because he was being be deported back to Jamaica from McRae Correctional Facility. (Doc. no. 52.) Due to Plaintiff's deportation and arrival in Jamaica, the Court, on May 11, 2016, ordered Plaintiff to inform the Court whether he intended to pursue this case due to his apparent lack of resources to return for trial and whether his status as a deported alien would prevent such a return. (Doc. no. 54.) Given Plaintiff's apparent lack of response, Defendants filed a motion to dismiss for failure to prosecute on June 1, 2016. (Doc. no. 55.) However, Plaintiff filed a response on June 14, 2016 stating that he wished to pursue this case, but did not address the issue of whether it was feasible for him to return for trial.

Because the Court has recommended that Defendants' motion for summary judgment be granted, the Court finds it unnecessary to address whether Plaintiff's status as a deported alien should result in dismissal of this action against Defendants Stone, Giles, Staples, and Harris, and their motion to dismiss is now moot. In addition, because Plaintiff has already arrived in Jamaica, his motion requesting Defendants withhold all responses is also moot.

## III.    CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the motion for summary judgment be **GRANTED** (doc. no. 41), Defendants' motion to dismiss be

9

**DENIED AS MOOT** (doc. no. 55), and Plaintiff's motion to withhold all responses be **DENIED AS MOOT** (doc. no. 52). Because Defendant CCA McRae Correctional Facility failed to move for summary judgment but is most likely entitled to such on the same basis as the movants here, the Court **GRANTS** an additional thirty days for it to move for summary judgment from the date of entry of this Report and Recommendation.

SO REPORTED and RECOMMENDED this 8th day of August, 2016, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA